**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TONYA EVETTE RHODES,
          Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
          Agency.

DOCKET NUMBER
AT-0752-12-0316-X-1

DATE: April 26, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

Tonya Evette Rhodes, Seffner, Florida, pro se.

Kristin Langwell, Esquire, St. Petersburg, Florida, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**ORDER**

¶1      The administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision in the underlying removal appeal. *Rhodes v. Department of Veterans Affairs*, MSPB Docket

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

No. AT-0752-12-0316-C-1, Compliance File, Tab 11, Compliance Initial Decision (CID). On April 13, 2015, September 25, 2015, and July 18, 2016, we issued nonprecedential orders finding the agency in partial compliance. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-X-1, Compliance Referral File (CRF), Tab 5 (April 13, 2015 Order), Tab 12 (September 25, 2015 Order), and Tab 30 (July 18, 2016 Order). For the reasons discussed below, we now find the agency noncompliant on the two outstanding issues and order appropriate relief.

**DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE**

¶2 On March 15, 2013, the administrative judge issued an initial decision reversing the appellant's removal and requiring the agency to restore her effective February 15, 2012. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-I-1, Initial Appeal File (IAF), Tab 47, Initial Decision. The decision required the agency to pay her appropriate back pay and benefits. *Id.* Neither party filed a petition for review, and the initial decision became the final decision of the Board.

¶3 Following the appellant's petition for enforcement, on December 10, 2013, the administrative judge issued a compliance initial decision finding the agency in noncompliance with the initial decision. CID. The administrative judge held that the agency failed to adequately explain its back pay calculations, including how it calculated the back pay period and interest amounts. CID at 3-4. The administrative judge further held that the agency failed to provide evidence to show that it made appropriate transfers to the appellant's Thrift Savings Plan account and her Federal Employees' Group Life Insurance. *Id.* Finally, the administrative judge found that the agency admitted it may have erroneously submitted a debt notice to the Office of Personnel Management regarding the appellant's Federal Employees Health Benefits (FEHB) plan and had not provided

evidence that it corrected such error. *Id.* Neither party filed a petition for review of the compliance initial decision.

¶4 On April 13, 2015, the Board issued a nonprecedential order finding the agency in noncompliance and ordering it to submit additional evidence. CRF, Tab 5. On September 25, 2015, the Board issued a second nonprecedential order that found the agency compliant on some issues and noncompliant on others. CRF, Tab 12. Finally, on July 18, 2016, the Board issued a third nonprecedential order that found the agency compliant on four issues and noncompliant on two issues. CRF, Tab 30 at 4. The Board ordered the agency to submit the following information:

1. Evidence that the agency expressly notified the appellant of the amount owed for retirement contributions and her options with regard to seeking waiver of this debt.

2. A narrative explanation regarding how the FEHB premiums erroneously withheld between April 1, 2012, and May 5, 2013, were applied to the appellant's outstanding annual leave debt.

*Id.* at 6, 7-8; CRF, Tab 12 at 10-11.

¶5 Following this order, both parties filed submissions. CRF, Tabs 32-34, 36-38, 40-44.[2,3] For the reasons discussed below, we find the agency

---

[2] On March 5, 2021, the appellant filed a pleading and a number of documents with the Board's Atlanta Regional Office, which docketed her submission as a second petition for enforcement of the Board's March 15, 2013 final decision. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-C-2, Compliance File (C-2 CF), Tab 1. In a March 19, 2021 compliance initial decision, the administrative judge found that the appellant's submission pertained to matters addressed in the first compliance initial decision and pending before the Board in this compliance referral matter. C-2 CF, Tab 7, Compliance Initial Decision. Accordingly, she determined that the second petition for enforcement had been docketed in error and dismissed it. *Id.* The documents submitted in the improperly docketed second compliance file have been added to the compliance referral file. CRF, Tab 42.

[3] On February 22, 2022, the appellant filed a motion requesting leave to submit "additional new and material evidence." We grant the appellant's motion and have considered her submissions, which include a May 28, 2015 Equal Employment

noncompliant on both issues. We order the agency to waive the debt the appellant owes for retirement contributions and to refund, with interest, the amounts withheld for the appellant's FEHB premiums.

**ANALYSIS**

¶6    When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation she would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Id.* The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Waiver Notice for Debt Generated by Lack of Retirement Contributions

¶7    In our April 13, 2015 Order, we found that the agency satisfactorily explained that the appellant owed a debt for retirement contributions that the agency erroneously failed to deduct from her back pay payment. CRF, Tab 5 at 9. However, in our September 25, 2015 Order, we found that the agency had failed to submit evidence that it provided her any applicable notice and opportunity to request waiver of this debt mandated by her collective bargaining agreement. CRF, Tab 12 at 8-9.

---

Opportunity Commission, Office of Federal Operations decision, her responses to her proposed termination, transcripts from the equal employment opportunity investigation, and work-related emails and letters. CRF, Tabs 43-44. However, these documents pertain to the merits of the appellant's termination and to her claims of discrimination, and they are not relevant to the issues now before the Board—i.e., the agency's compliance with the Board's final order.

¶8        On February 10, 2016, the agency submitted a copy of the waiver notice it had sent the appellant on April 25, 2014. CRF, Tab 24 at 27-29. The appellant apparently did not receive the notice because it was sent to the wrong address. CRF, Tab 25 at 3. The agency contended that its provision of the notice in its pleading corrected this deficiency. CRF, Tab 26 at 5. We disagreed because the letter submitted by the agency did not inform the appellant how to request waiver of her debt. CRF, Tab 30 at 6. We ordered the agency to send the appellant a new copy of the complete waiver letter and notice, dated the day it was sent so that she would have the full time to request waiver. *Id.*

¶9        On August 3, 2016, the agency filed a copy of the letter it sent to the appellant in response to our order. CRF, Tab 32. Strangely, contrary to the instructions in our order, the agency did not send a new copy of the waiver letter updated with a new date; rather, it appears the agency merely resent a copy of the letter dated April 25, 2014. *Id.* at 7. Not only does this not satisfy the requirements of our order, it arguably prejudices the appellant because it is not clear that she can seek waiver of her debt at this late date. The waiver instructions state that waiver request must be received within 3 years following the date the debt was discovered. *Id.* at 12. This date is unclear from the letter. Because the agency has not proven its compliance on this issue, we find it noncompliant and order the agency to waive this debt ($74.28 according to the letter, *id.* at 7), plus any interest outstanding as a result of the appellant's failure to pay the debt. The agency must submit evidence that it has waived this debt and any interest, in accordance with this order.

FEHB Premiums Withheld after the Back Pay Period

¶10       In our September 25, 2015 Order, we held that the agency failed adequately to explain whether and how it refunded the $4,366.56 it owed the appellant for FEHB premiums erroneously withheld between April 1, 2012, and May 5, 2013 ($198.48 per pay period x 22 pay periods). CRF, Tab 12 at 9. Although the

agency claimed that it had credited the full amount to the appellant's outstanding annual leave debt, its documents appeared to show that it credited (if anything) only $176.91 per pay period for 16 pay periods ($2,830.56), leaving it $1,536.00 short. *Id.* (discussing agency evidence). We ordered the agency to explain this discrepancy. *Id.* at 11; CRF, Tab 30 at 7-8.

¶11    On October 28, 2016, the agency submitted its explanation. CRF, Tab 36. The agency claimed that rather than refund the amount owed for improperly withheld FEHB premiums as a lump sum, it was "offsetting" this amount against the appellant's $6,800.63 debt for annual leave (which we previously found to be valid, CRF, Tab 12 at 7-8). CRF, Tab 36 at 4. These offset deductions are made monthly from the appellant's annuity. *Id.* The amount, $176.91, is the maximum the agency can deduct monthly pursuant to its handbook. *Id.* at 6-11.

¶12    The agency's explanation makes no sense. The agency states that it is offsetting—i.e., deducting—these amounts from the appellant's annuity, but the agency is not entitled to *deduct* an amount that it *owes* the appellant. Rather than deducting anything, the agency should have *credited* the amount against the appellant's outstanding annual leave debt (as indeed it originally claimed to have done, though without any evidentiary support). Had it done so, the appellant would have owed $2,434.07 to cover her annual leave debt ($6,800.63 minus $4,366.56). Instead, documents submitted by the appellant show that she has paid the entire amount of the $6,800.63, through monthly deductions or garnishments of $176.91. CRF, Tab 38 at 4, Tab 45 at 4. The appellant's evidence therefore shows that the deductions the agency claims to be "offsets" or "credits" for her FEHB debt were in fact deductions to pay for her annual leave debt, and the agency—contrary to its repeated claims—never refunded the amounts it improperly withheld to cover her FEHB premiums.

¶13    The agency has submitted nothing of substance to counter this evidence; its submissions merely reiterate in conclusory fashion that it is "offsetting" her annual leave debt, with no apparent understanding that it is essentially compelling

the appellant to pay two debts when she owes the agency only one. CRF, Tab 40 at 4-5. To the extent the agency relies on its claim that it "canceled" the FEHB debt and "the amounts taken to satisfy the FEHB debt were transferred to the lump sum debt," *id.* at 11, the evidence submitted by the appellant shows otherwise. CRF, Tab 38 at 4, Tab 45 at 4.

¶14  Accordingly, we find the agency in noncompliance on this issue and order it to pay the appellant $4,366.56 plus interest. The interest calculation should begin from the dates the FEHB premiums were originally withheld and continue to within 30 days of the date the payment is made. *See* 5 U.S.C. § 5596(b)(2)(B). The agency must submit a narrative explanation and documentary evidence of its interest calculations, as well as documentary evidence of a check or other payment made to the appellant for the principal and interest.

Further Action Needed for Compliance

¶15  Within **30 calendar days** of the date of this Order, the agency shall submit the evidence discussed above. If the agency fails to submit the required information, the Board may again issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.183(c).

¶16  The appellant shall file a response within **21 calendar days** of the agency's submission. Failure to submit a response within the required time period may cause the Board to assume the appellant is satisfied and dismiss the petition for enforcement.

FOR THE BOARD:                    /s/ for
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.